IN THE UNITED STATES DISCTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| PHILLIP ALTMAN | § | |
| :--- | :--- | :--- |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:11-CV-00495-JRG |
| | § | |
| KEY ENERGY SERVICES, LLC | § | |
| Defendant | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

**I.    Introduction**

Pending before the Court is Defendant Key Energy Services' ("Key Energy") Motion to Partially Dismiss (Dkt. No. 3). Key Energy's motion is **GRANTED** as set forth herein.

**II.   Factual and Procedural Background**

On May 12, 2010, Defendant Key Energy terminated its employee, Plaintiff Phillip Altman. (Dkt. No. 1, ¶27). On February 8, 2011 (273 days later), Altman filed an Initial Charge of Discrimination ("Initial Charge") with the Equal Employment Opportunity Commission ("EEOC"). This Initial Charge was within the applicable 300-day deadline and alleged age discrimination under the Age Discrimination in Employment Act ("ADEA"). (Dkt No. 5, ¶7). As support, Altman included statements by Key Energy Senior Vice President stating the company was "looking for good young talent because [it] did not have a whole lot in the bullpen." (Dkt. No. 1, ¶25). Over three months after the 300-day deadline passed (105 days), prompted by to a question first raised by the EEOC investigating officer as to his health, Altman amended his EEOC Initial Filing to add a claimed violation of the Americans with Disabilities Act ("ADA") based on a number of health-related issues. (Dkt. No. 1, ¶7; Dkt. No. 3 at 4).

1

Altman claims Key Energy was aware of his health issues because he directly informed his immediate supervisor of doctor visits and their results. (Dkt. No. 1, ¶20). These health concerns include a recently discovered skin cancer requiring two surgeries, a recently discovered cyst on Altman's liver that would require monitoring, and a potential knee replacement. (Dkt. No. 1, ¶20). Altman pleads that because of these health concerns, Key Energy viewed Altman as having a disability. (Dkt. No. 1, ¶21).

After receiving a Notice of Right to Sue from the EEOC, Altman filed suit in this Court. (Dkt. No. 5, ¶7). In his Complaint, Altman alleges Key Energy discriminated against him for both his age and disability. (Dkt. No. 1). Key Energy filed both an Answer and this Motion for Partial Dismissal. (Dkt. No. 5; Dkt. No. 3). Key Energy argues Altman is unable to bring a claim based on disability discrimination because it was not timely raised with the EEOC.

### III. Governing Law

*A. Federal Rule of Civil Procedure 12(b)(6)*

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although factual allegations in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

A claim cannot be dismissed under Rule 12(b)(6) unless the plaintiff "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Muhammad v. Dallas Cnty. Comm'n. Supervision and Corr.*

*Dept.*, 479 F.3d 377, 379 (5th Cir. 2007) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted. *Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.2005)); *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir.1982)).

*B. Bringing a Claim under the EEOC*

A charging party is required to file an initial charge of discrimination with the EEOC within 300 days of the complained of employment action. 42 U.S.C. § 2000e-5(e)(1) (2006); *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). The limitations period begins to run from the time the employee "knew or reasonably should have known that the challenged act [had] occurred." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000)).

Plaintiff was fired by Key Energy on or about May 12, 2011. This started his 300-day period, which ended on or about March 8, 2011. For reasons not presented to the Court, Plaintiff waited 273 days before filing his Initial Charge with the EEOC. He amended his charge to raise health and ADA issues on or about June 20, 2011, which was more than 3 months after the 300-day window closed.

"A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b) (2009) (incorporating 42 U.S.C. §2000e-5(e)(1)). "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the

3

subject matter of the original charge will relate back to the date the charge was first received." *Id.* "However, an amendment alleging additional acts constituting unlawful employment practices not directly related to or growing out of the subject matter of the initial charge will be permitted only where, at the date of the amendment, the allegation could have been timely filed as a separate charge." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 458 (5th Cir. 1970)).

Generally, amendments that raise a new legal theory of discrimination do not "relate back" to the initial charge of discrimination. *See Manning*, 332 F.3d at 878 (citation omitted). However, amendments, even those that allege a new theory of recovery, can relate back to the date of the initial charge when the facts supporting both the amendment and the initial charge are essentially the same. *Id.* at 879 (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985); *Sanchez*, 431 F.2d at 462-64. In these instances, it is the factual statement of the initial charge that is the crucial element. *Sanchez*, 431 F.2d at 462. In this case, there is nothing in the Initial Charge that suggests health-related discrimination, either factually or legally. The Initial Charge raises only issues of age discrimination.

Whether an amendment directly relates or grows out of the subject matter of the initial charge depends upon the language of the factual statement. *Compare Sanchez v. Standard Brands*, 431 F.2d 455 (5th Cir. 1970) *with Manning v. Chevron Chem. Co.*, 332 F.3d 874 (5th Cir. 2003).

In *Sanchez v. Standard Brands*, the court ruled the plaintiff was not barred from bringing additional claims of discrimination based on national origin and sex, which were first raised by an amendment made after the 300-day window had closed. 431 F.2d 455. The plaintiff's initial charge read "'[m]y complaint was that my boss lady hit me at my rear end and about a month before that I hurt my thumb and was out of work for seven days and the Company didn't pay me.

4

I hurt my thumb at work." *Id.* at 458. After the 300-day deadline had passed, the plaintiff amended her complaint to state:

> I was discriminated against by Standard Brands, Inc. because of my national origin and sex. My supervisor became very abusive toward me and con-stantly harrassed [sic] me on my job. She would rush me and one day she caused me to hurt my thumb. I lost 7 days of work and the company would not pay me for my lost time. On another occasion my Supervisor struck me on my buttocks with her hand and accused me of doing my work wrong, rather than argue with her I told her husband (the plant manager) I was going home. When I returned the next day my supervisor told me she did not need me anymore and fired me. My supervisor seemed most [sic] abrupt and vengeful against Negro and Mexican American women than with Anglo women.

*Id.* at 459.

In supporting its decision, the court noted "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 466.

In 2003, the Fifth Circuit again addressed this issue in *Manning v. Chevron Chem. Co*. 332 F.3d 874. In *Manning*, the plaintiff, after being passed over for a promotion, filed an EEOC complaint alleging race and gender discrimination. *Id.* at 876. After consulting with an attorney who noted the plaintiff's speech impediment, the plaintiff added disability claims to his earlier claims regarding race and gender. *Id.* at 876-77.

Upholding the district court's dismissal, the court of appeals held the plaintiff failed to allege sufficient facts in the initial charge to provide the defendant with the requisite notice of the added disability claim. *Id.* at 879. The court noted the issue is not whether the employee adds any facts when he amends the charge, but whether the employee <u>already included</u> sufficient facts to put the employer on notice that the employee might have additional allegations of discrimination. *Id* (emphasis added).

**IV.    Analysis**

Altman argues the facts found in the Initial Charge sufficiently support both the claim of age and disability discrimination. The Court disagrees. Here, the Initial Charge contains no facts that could give reasonable notice of the health claims added in Plaintiff's amendment of June 20, 2011.

In his initial charge with the EEOC, Altman raises a claim of age discrimination, but fails to include any facts or statements that could infer disability discrimination related to his health. (Dkt. No. 3, Exhibit 1). In the "Personal Harm" portion of his Initial Charge filed with the EEOC, Altman states: "I was fired due to my age"; "During an interview of an outside candidate to possibly eventually succeed [Altman], [Key Energy's Senior Vice President] said that Key Energy was looking for 'good young talent'"; and "Key has made other efforts to terminate other employees as they approach retirement age." *Id.* There is nothing here that comes close to touching on his health, even tangentially.

This Court can only speculate that, had Altman filed his Initial Charge with the EEOC closer to his termination date (and not 273 days into the 300 days allowed), the issues regarding his health (first raised by the EEOC investigator) might have surfaced within a time frame that would have placed his amendment well inside the 300-day period. That did not happen in this case.

In summary, it is clear that Altman timely filed a charge of age discrimination, per his Initial Charge, within the 300 day limitation. However, the facts Altman chose to include in his Initial Charge do not (even under the most generous reading) give rise to or notice of a claim for disability discrimination. Since his amendment was made beyond the 300-day limit, its mention (for the first time) of health matters and disability discrimination cannot properly relate back to the Initial Charge. To do otherwise would fly in the face of the public policy promoting fair

notice to the employer, who must then defend against a previously unasserted claim. Both *Sanchez* and *Manning* indicate that this is precisely the situation that the 300-day limitation was created to avoid.

**V.      Conclusion**

The Court finds that the factual allegations found in Plaintiff's Initial Charge to the EEOC sufficiently provide Defendant notice of an age discrimination claim, but fail to support a claim for disability discrimination. Accordingly, and as set forth above, Defendant Key Energy Company's Partial Motion to Dismiss (Dkt. No. 3) under Rule 12(b)(6) is hereby **GRANTED.** Altman may only proceed on the claim for age discrimination found in the EEOC Initial Charge, and his action for disability discrimination is **DISMISSED**.

**So ORDERED and SIGNED this 12th day of September, 2012.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE